

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

RACHEL LYNN SANNING, )
)
Appellant, )
)
v. ) WD85886
)
DIRECTOR OF REVENUE, ) Opinion filed: March 26, 2024
STATE OF MISSOURI, )
)
Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
THE HONORABLE CHRISTOPHER K. LIMBAUGH, JUDGE**

Division Four: Gary D. Witt, Chief Judge,
Alok Ahuja, Judge and Edward R. Ardini, Jr., Judge

Rachel Sanning ("Sanning") appeals the judgment of the Circuit Court of Cole County ("trial court") sustaining the suspension of her Missouri driver's license imposed by the Director of Revenue ("Director"). Finding that the trial court's judgment is not supported by substantial evidence, we reverse.

## Background

On or about January 31, 2022, the Missouri Department of Revenue ("Department") notified Sanning that her driver's license would be suspended beginning on March 3, 2022, for thirty days, followed by a sixty-day period of restricted driving privilege. The

Department's letter stated that the suspension was based on the accumulation of eight points resulting from a conviction for driving while intoxicated. The letter did not indicate where or when this conviction had occurred.

Pursuant to section 302.311 RSMo,[1] Sanning filed a Petition to Review the Suspension of Her Driver's License wherein she alleged that she "had not been convicted of any offense by any court of competent jurisdiction that would justify the imposition of penalty points" against her driver's license. The Director answered the petition asserting that the accumulation of points was based on Sanning's conviction for "driving while intoxicated on October 23, 2021, in the United States District Court Military Address Pacific."

At the hearing, the Director produced a copy of Sanning's Missouri driving record which included an assessment of eight points for a conviction for driving while intoxicated dated October 23, 2021, in "Military Address Pacific by U.S. DISTRICT court MILITARY ADDRESS PACIFIC[.]" The Director additionally produced a letter the Department had received from the Office of the Provost Marshal, Registry of Motor Vehicles, United States Army Europe and Africa, dated January 3, 2022 ("Provost Marshal's letter"). The subject line of the Provost Marshal's letter stated "Revocation of U.S. Forces driving privileges while stationed in Germany." The letter explained, in part, that:

> This letter pursuant to Department of Defense policy is your notification that the below listed person who is a member of the U.S. Forces stationed in the Federal Republic of Germany, has been charged and

---

[1] All statutory references are to the Revised Statutes of Missouri 2016.

sanctioned for driving under the influence of alcohol and his/her U.S. Forces driving privileges have been revoked. The following information is provided:

Operator Name:  SANNING RACHEL L

. . .

Violation / Offense: He/she was apprehended driving a vehicle while intoxicated. His/her BAC result (blood-alcohol content) was 0.08 grams, or higher, of alcohol per 100 milliliters of whole blood. The actual result of the BAC was 0.1 grams/100 milliliters of whole blood.

Violation / Offense Date: 2021-10-23

Adjudication / Action Date: 2021-10-23

. . .

During her testimony, Sanning acknowledged that she had been arrested for driving while intoxicated in Ramstein, Germany, while not on a federal installation. However, according to Sanning, she was never criminally charged by the United States government or United States military, had never appeared before a military tribunal, and did not enter a plea in a German court related to the arrest.

The trial court sustained the suspension of Sanning's driver's license finding that she had admitted to being arrested for driving while intoxicated, and that "it is not disputed that a DWI in Germany is an offense had it occurred in Missouri points would be assessed." The trial court concluded that the assertion in the Provost Marshal's letter that Sanning had been "charged and sanctioned by the federal government and that her license was revoked" was sufficient to warrant the Department's assessment of eight points and the suspension of her Missouri driver's license and that Sanning's argument that the Director had failed to establish the existence of the underlying conviction was an impermissible collateral attack on that conviction.

This appeal follows.

## Standard of Review

"On an appeal from a petition for review under section 302.311, an appellate court reviews the judgment of the trial court rather than the Director's decision." *Folkedahl v. Dir. of Revenue*, 307 S.W.3d 238, 240 (Mo. App. W.D. 2010). We will affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.3d 30, 32 (Mo. banc 1976). All evidence is viewed in the light most favorable to the judgment. *Carlson v. Fischer*, 149 S.W.3d 603, 605 (Mo. App. W.D. 2004). We review questions of law *de novo*. *See Peterman v. Dir. of Revenue*, 579 S.W.3d 268, 271 (Mo. App. E.D. 2019).

## Analysis

In her single point on appeal, Sanning claims that the trial court's judgment upholding the Director's suspension was not supported by substantial evidence, arguing that the Provost Marshal's letter, upon which the Director solely relied to assess points and suspend her driver's license, was legally insufficient to support a finding that she had been "convicted" of driving while intoxicated.

Section 302.304.3 requires the Director to suspend the license and driving privileges of a person who accumulates at least eight points on their driving record within an eighteen-month period. Upon suspension or revocation of a driver's license, a driver may request a *de novo* review of the Director's action in the circuit court where the driver resides. § 302.311. In this review, the trial court applies a three-part burden shifting scheme. First,

4

the driver must establish that she is entitled to a driver's license. *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 54 (Mo. banc 2001). Then, the burden shifts to the Director "to establish by a preponderance of the evidence that the driver is not entitled to a license." *Schnitzer v. Dir. of Revenue*, 297 S.W.3d 604, 607 (Mo. App. E.D. 2009). To satisfy this burden, the Director "must make a *prima facie* showing of the facts necessary to support the suspension of a license." *Carlson*, 149 S.W.3d at 606. If the Director makes this showing, the burden shifts back to the driver to establish that the facts relied on by the director are untrue or legally insufficient to support the suspension of her driving privileges. *See id*.

There is no dispute that Sanning established that she was entitled to a driver's license. Thus, the burden shifted to the Director to show, by a preponderance of the evidence, the facts necessary to support the suspension of Sanning's driver's license. In order to satisfy this burden, the Director was required to establish that he had received "notice of a conviction in another state or from a federal court, which, if committed in this state, would result in the assessment of [eight] points[.]" § 302.160.

In support of his position, the Director introduced two documents at the hearing: Sanning's driving record and the Provost Marshal's letter. The information the Director entered on Sanning's driving record concerning the incident in Germany was based solely on the information contained in the Provost Marshal's letter. Thus, whether the Director made his *prima facie* showing must be evaluated through the contents of the Provost Marshal's letter.

5

"There are no specific requirements describing the type of documentary evidence the director must present to the trial court in order to sustain [his] burden of presenting a *prima facie* case for the suspension of a driver's license based on an out-of-state conviction." *Schnitzer*, 297 S.W.3d at 607. However, a notice received by the Director of a conviction entered in a foreign jurisdiction must, at a minimum, include the "identification of the court in which the action was taken." *West v. Dir. of Revenue*, 184 S.W.3d 578, 582 (Mo. App. S.D. 2006) (internal marks omitted). This requirement exists so an aggrieved driver "receives reasonable notice as to why the Director has revoked a driver's operating or commercial driver's license, and by which such driver may meaningfully exercise his appeal rights accorded by section 302.311." *Id*. In this instance, the notice received by the Director through the Provost Marshal's letter failed to identify the court in which the purported conviction was entered and thus was insufficient under *West*.[2]

Even looking past the failure of the notice received by the Director to identify the court in which the alleged conviction was entered, we would still find the Director's evidence to be insufficient to support the suspension of Sanning's driver's license.

---

[2] Sanning's driving record indicates that the conviction was entered in "Military Address Pacific by U.S. DISTRICT court Military Address Pacific[.]" While the information entered into the driving record was obtained from the Provost Marshal's letter, we note there is no mention in that letter to "Military Address Pacific," a "U.S. DISTRICT court" or a "conviction" having been entered against Sanning. In fact, the reference to "Military Address Pacific" is confusing, given the event occurred in Germany and the notice received by the Director was issued by the Office of the Provost Marshal, Registry of Motor Vehicles for the United States Army Europe and Africa on letterhead containing an Army Post Office designation of AE which refers to Armed Forces Europe.

As an initial matter, we must address the trial court's finding that Sanning's argument—that no criminal conviction exists concerning the events of October 23, 2021—constituted an impermissible collateral attack of a conviction. In support of this finding, the trial court relied on *Carlson* which is readily distinguishable from the present case. In *Carlson*, the Director produced a copy of the ticket issued to the driver, a record of conviction, and sentencing entry form—each from the Gahanna Mayor's Court, Franklin County, Ohio. *Carlson*, 149 S.W.3d at 604. The ticket and the record of conviction both indicated that the driver had been arrested for driving under the influence of alcohol, and the sentencing entry form contained details of the penalties imposed. *Id.* at 605. In *Carlson*, this Court found the driver's argument challenging the propriety of the actions of the Ohio court was an impermissible collateral attack on the previously entered convictions. *Id.* at 607 ("The propriety of the Ohio court's action cannot be raised in a proceeding under section 302.311.").

Significantly, unlike in *Carlson*, Sanning is not challenging the legitimacy or propriety of an underlying conviction entered by a court; rather, she is challenging the *existence* of such a conviction. Sanning accurately points out that the Provost Marshal's letter made no mention of her having been convicted of any offense. In fact, unlike the abundance of evidence plainly establishing the existence of the underlying prosecution and conviction in *Carlson*, the Provost Marshal's letter—constituting the only notice received by the Director—is devoid of any specific reference to an underlying criminal prosecution let alone whether such a prosecution resulted in a conviction. Sanning was clearly within her rights to point out these deficiencies in the Director's *prima facie* case by arguing the

7

Director had failed to establish the existence of an underlying conviction and it was error for the trial court to find this effort to be an improper collateral attack of a conviction.

Turning to the merits, the Director argues that reference in the Provost Marshal's letter to Sanning having been "charged" and "sanctioned" in connection with an "arrest" for "driving under the influence" provided a sufficient basis to conclude that she had, in fact, received a criminal conviction for that conduct. We disagree. As explained above, the Provost Marshal's letter never states that Sanning was convicted of a criminal offense and identifies no court in which such a prosecution was initiated. In fact, the notion that the intention of the Provost Marshal's letter was to provide the Director with notice of a criminal conviction is contradicted by the subject line of the letter which stated "Revocation of U.S. Forces driving privileges while stationed in Germany." The subject line and lack of any reference to a conviction in the body of the letter indicates the purpose of the Provost Marshal's letter was to inform the Director of an administrative sanction that had been imposed against Sanning's "U.S. Forces driving privileges." This conclusion finds additional support from the letter's assertion that the "violation/offense" and "adjudication/action" occurred on the same date. The Director fails to explain how Sanning could have been "convicted" of a criminal offense in a "U.S. DISTRICT court" on the same day she allegedly committed the offense. The apparent swiftness of the "adjudication/action" identified in the Provost Marshal's letter more logically aligns with an "administrative sanction" of the type identified in the letter's subject line (and never disputed by Sanning)—the revocation of Sanning's driving privileges while stationed in

Germany—an action that would not provide the Director a basis to assess the points necessary to suspend Sanning's driver's license.

Accordingly, we conclude that the Director failed to present sufficient evidence to support the trial court's finding that Sanning received a conviction for an offense that would support the assessment of points on her driving record and the resulting suspension of her driver's license.

## Conclusion

For the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded with instructions to set aside the suspension of Sanning's driver's license, order the Director to remove from Sanning's driving record the purported conviction dated October 23, 2021, and to reinstate her driving privileges to the extent she is otherwise eligible.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.